But your time is limited. Why do you think you're entitled to priority to the 125 patent? I think we're entitled to priority to the 125 patent because Claim 61 could have been presented in the 125 patent. There's sufficient disclosure in the 125 to enable... What do you mean by sufficient disclosure? I mean, there's not direct disclosure on what's disclosed in the new claim, right? Yes, there is. Well, you know, if you look at... I think if you look at the claim, the... Claim 61. Claim 61. We have the term region member and the term LAMP. Those would be the two things that everyone would argue over being in the 125. I think the first thing is ICU Medical says that a claim has to be supported by the specification, but we don't have to have absolute precise language in the specification. I think it's... I mean, it's a fact that the term light and LAMP are used interchangeably, and either one can mean either a fixture or a bulb. You have... Do you think there's sufficient disclosure of rings and collars in the 125 patent? Inherently, yes. What does that mean, inherently? Well, PARCANs at the time of the one in 1998, PARCANs, many of them used rings and collars to actually retain the bulb inside the PARCAN. They just had the barrel on the front and a cover on the back to protect people from getting burned. That's kind of anecdotal, you're telling us now. What's in the specification? Just the PARCAN. But one of ordinary skill in the art who'd ever opened a PARCAN would understand that there were rings and collars inside the PARCAN. So you're saying it's kind of an... you're applying kind of an obviousness analysis. Right. It would have been obvious. But our case law doesn't allow that, does it? Yes, it does. I mean, if you... you don't have to disclose every possible embodiment. You disclose the best mode. At the time Mr. Finn did this, I mean, if you look at the realities of the way products evolved, Mr. Finn couldn't afford to go out and have stuff fabricated. He went out and bought some PARCANs and built a fixture with PARCANs, realized he had something unique and something different and something patentable. He went to a patent attorney and patented it. The patent attorney doesn't realize that there's... Molpar has rings and collars or that rings and collars are widely used in the art. So when Mr. Finn had enough money to go out and develop something different, he goes out and develops something different and then he says, maybe I should patent this too. And you end up with the rings and collars embodiment. But the whole industry was aware of rings and collars in 1998. You've got at least one case in Ray Huston's, right? Huston, however you pronounce it. And it says explicitly, entitlement to a filing date does not extend to subject matter which is not disclosed. It would have been obvious over what is expressly disclosed. Assuming that's the case law, isn't what you're advocating here bump up against that principle? But how do you have that principle against every single embodiment doesn't have to be Can I ask you, even if it's right that there are inside some cans, rings and collars, does the 125 specification disclose rings and collars alone without the surrounding cans? No, it does not. But 61 covers that. Yes, it does. So where does a 125 patent disclose or enable a rigid member for mounting? The, if you, I don't have the 125 in front of me, but if you, in the 434, it's basically the same disclosure. I believe it's column 7, lines, around line 10, line 8 through 14 in that area. They describe the, the, the frame, the elements, I don't, like I said, I don't have the 125 in front of me, but the elements are 20 and 22 that make up the frame in the, in the 125. You're talking about 434, column 7, you said? Yes. And actually You're talking about the various frame members? Yes. Is that what you're referring to? And the language of the, let me get there, back to there. So, yes, so V brackets 20 and 22 make up the frame. The rigid member, would be the rigid members in the 125 embodiment. And that, that disclosure is identical in the, in the 125. And again, it doesn't use the word member with regard to those. Well, what is the disclosure for mounting both the mounting lights and the housing? The, if you go to, I think that Requester, when they filed the, the original case for the Interparties Re-Exam, they used, actually I do have the 125 in front of me. Thank you. They used lamp, the term lamp to refer to a bulb and the term light to refer to a fixture. And that's, I believe the claims teach us that that's backwards and we fell into the trap of arguing it that way up until now. But I think if you look at claims 80 and 81, it's clear that the patent, that the patent attorney intended lamp to be the fixture in this, in the 434 and light to be the, the bulb in the, so when you look back. In the 125 patent, where, where is the disclosure for the rigid member that, for both the mounting and the, and the lamps, for both mounting the lamps and also mounting the housing? Okay. So, in the 125, you have the speed rail, the bar, the pipe that is attached. Show us where in, in the patent. It is the bar 14. Figure 2. The bar 14 is, and is, and the V brackets put together comprise the rigid member. The lights, in this case, are the fixtures. The, the lights are the fixtures and they attach to the, to the bar. Or in this case, in the, in terms of claims 61, it would actually be the, the. The par lamps mount to the, to the bar. And the lamp is the entire fixture. Can I take you back to the legal principle that I think we were trying to articulate before? So, what is, is it your view that in terms of sufficient disclosure in the earlier application that, where do you draw the line? I mean, you say, okay, the principle is that the written description, all you have to do is to disclose one embodiment, the preferred embodiment, the best mode or whatever. So, where do we draw the line in terms of how you can get priority in terms of what is disclosed? I mean, I think it would be great if you could say if a claim could have been presented in the parent, it should be entitled to the, to the parent's priority date. But it doesn't, I mean, doesn't that just reformulate the question then? We would have to have the question, how can you tell whether the claim could have been presented? And, I mean, that's what courts do all the time. You have a best mode that's disclosed in the specification. And then, you know, people seldom copy the best mode. There's always, there's almost always some changes. So, the, I mean, I think it's just, if you, if it's in the range of equivalence that would be, that would be allowed in the specification. I mean, from the, if you have one of ordinary skill in the art, and they read a specification of one of ordinary skill in the art, be able to construct it without undue experimentation. You have, the problem is, the way you ask the question. Well, there you're bringing in, I mean, you're kind of referencing sort of an obvious analysis, an enablement analysis. And, of course, we're talking about written description, and consistency of written description. It is different, but the, you have to be able to resolve the fact that you don't have to disclose every embodiment in the specification. So, if you, if one of ordinary skill in the art would have recognized it from reading the specification, I think there would be no question that it was enabled at the time. So, if you turn the, if you turn the clock back to 1998, and someone who reads the specification would say, if a gaffer with 20 years experience reading it would say, you know, he could have used rings and collars instead of the, of par cans. And, rings and collars are well known in the art. I don't think it's fair to exclude a ring and collar embodiment. Does the specification here say something to the effect that, the original specification, the 125, say something to the effect that one of the reasons what I've described here is inventive is that you can sort of snap these cans on and off very easily. Very easy to put the fixture onto the bar. Very easy to take it off. And that really wouldn't be true with the canless ring collar system, right? Because there, in that system, as described in the 434, to the extent that there's a frame member, it's really, it's not a bar. It's the whole structure into which the rings and collars fit in a way that's not so easy to insert and remove. Yes, but that's not a claimed feature in Claim 61. And you wouldn't have to have claimed that feature in, I mean, in his preferred embodiment. That was one of the things that he described as a feature or a reason for that being the preferred embodiment at the time. But that wasn't a, that's not a claimed feature in 61. He's not required to claim that feature just because he sees it as an advantage. Why don't we hear from the other side? Okay. Good morning. Bridget Agnes for Appellee, Mill Richardson Company. I think the board got it exactly right. There is no support in the 125 patent for Claim 61. How do you reconcile our cases, though? As your friend on the other side mentioned, we've got clearly disclosure of every single embodiment is not compelled under that, under our line of cases. So why is the disclosure here not sufficient? Well, I think he's confusing the issue of what you have to have to file a patent versus your entitlement to priority. You're only entitled to priority, to claim priority for what you previously invented. Here, the 125 patent only disclosed individual light fixtures clamped onto a bar that, as you said, were readily removable and replaceable. In the 434 patent, he realized that he could make a more integrated embodiment where you have lamps that are held in place by collars. And he came up with a different invention. And he's not entitled to claim priority to something that was merely obvious over a prior embodiment. Yeah, but we don't know that, right? I mean, there are assumptions or conclusions in your response. So what are the legal principles, though? You're saying if it would have been obvious, it's not enough. That's exactly right. But is it your view that he would have had to explicitly disclose what he's covered now in Claim 61, that specific disclosure of a particular embodiment would have been required? Yes. I mean, maybe not the exact words, but there needs to be some support for this embodiment with rings and collars. If you get back to Claim 61, it's a rigid member for both mounting PAR lamps and for mounting the housing. There's absolutely no description of a PAR lamp in the 125 patent. It was concerned with individual standalone light fixtures or PAR lights as he defined them. The 125 patent also says that these PAR lamps are clamped onto a bar, 14, and that that bar is supported by the housing. There is no structure in the 125 patent that performs the other function in Claim 61 of mounting the housing. So he has to disclose, in order to get a priority, he has to disclose his invention in the PAR application. The case law is, it must convey with reasonable clarity to those skilled in the arts that as of the filing date thought the vendor was in possession of the invention. If the invention is a frame with integrated collars for holding PAR lamps, that is just simply not disclosed in the 125 patent. And he's not entitled to a filing date to subject matter that's merely obvious over the prior embodiment. One of the ways I think I've sometimes tried to think about this, maybe without much success, is to ask whether the difference between what was originally described and what is now claimed raises any non-trivial technical issues that somebody would have to solve. Suppose you thought about it in that way. Would the switch from cans on a bar to lamps in a planar kind of structure raise any such technical issues for somebody who wanted to make the latter that are not, I guess, question mark? I think that goes to our obviousness argument. We're saying he had this 125 patent that had a bar with clamps on individual stand-alone light fixtures. And that that patent is prioritized. And the only thing you had to do to get to what's claimed in Claim 61 is to substitute that bar, 14, and the clamps on PAR lights with the mole PAR fixture. And these were fixtures that have been around since the 70s. It's an integrated fixture with multiple PAR lamps. In this case, for the mole PAR, it's six PAR lamps that, again, are held in place by collars and retaining rings. So it's our position that, no, it is just an obvious modification of his prior 125 patent. But, again, that goes to the point that he's not entitled to claim priority for something that was merely obvious over his prior invention. He would fail Judge Toronto's test, right? I mean, if it was his test talking about non-trivial, non-technical, you can see, then, that these were kind of trivial, non-technical changes. To someone's ordinary skill in the art, I think they would easily know how to do that. Whether it's trivial, I can't speculate. But, again, I think the point is that it's not disclosed. There's nothing disclosed in the 125 patent. So I'm not sure if that's the right analysis we should be looking at. But what do you do with, I guess, what is fairly common and certainly approved in case law going a long way back that says, you can have a written description that lays out one particular embodiment, and then the claims can be broader than that. The patentee says, looking at even what I've built or what I've thought of, these are the features that actually matter. And those are the ones I'm going to claim. And that, by definition, being broader is going to cover some embodiments that are not expressly laid out. We said the written description requirement does not render all those claims invalid. So how do you tell when something is too broad? Whether there's any support for that. Here we have a claim that we would say would not be supported by the 125 because the claim – that would require two different things that are the opposite of what's disclosed in the 125 patent. And I'm not sure where you draw the line in terms of – I mean, I think you need to – I need to think someone of ordinary skill in the art needs to be able to look at the disclosure and say, yes, that's what the person invented. That's what they came up with. It might not be exactly stated that way, but I could read that and understand what they're saying. And I don't – here I think we have the opposite. They have – they're trying to claim – trying to provide support – trying to find support in the 125 patent for something that's directly at odds with the claim language in Claim 61. I mean, the patent owner was in control of his destiny. He knew that he had a CIP application, there was multiple embodiments, and that there was a filing date issue because the 125 patent issued before the application for the 434 patent was filed. And that the patent owner could have drafted claims in the 434 that also covered the 125 patent, but I think the patent owner instead decided this is where the products are going. I'm going to claim the new product that I came up with, the Figure 41 and Figure 42 embodiment in this patent. By the way, as a factual matter, and the 434 is much, much longer than the 125. Besides adding the ring collar embodiment, what else, if you can describe simply, is new in the 434 that wasn't in the 125? I think he expanded on his Figure 2 embodiment in terms of having different structures to mount standalone par cans. So I think he was – he probably started making his product and was working on the nuances of that. And then he came up – I think the most important part of the 434, though, is the embodiments 41 and 42, which are an embodiment of a commercial product that he later introduced. But otherwise what's new in the 434 is more detail on some of the features that are already in the 125 but described with less specificity, is that what you're saying? Possibly. I think he came up with new housings that were foldable in different ways. Different ways of using the lights together. I think it was a very – a much more detailed expansion of the Figure 2 embodiment of the 125, except when it comes to the Figure 41 and 42 embodiment. Assuming that there is enough disclosure in the 495 – the 125 patent, what effect does a removal of the co-inventor in the subsequent patent, the 495 patent, have? Well, under 102A, the 125 patent – if he's not entitled to claim priority, then the 125 patent becomes prior art because it is an invention by others, because there is a difference in the inventive entities. The 125 patent, Mr. Finn was the – Mr. Finn and Mr. Lee are the inventor, where the 434, Mr. Finn is the inventor only. So, under NRACAP, it constitutes an invention by others. So, if he's not entitled to claim priority, then the 125 patent becomes prior art. And he has not made any showing that the invention of 125 was solely his invention. I think he has made no showing except to say that he is the owner of the 125 patent, rather to distinguish between what portion is Mr. Finn's work and what portion is Mr. Lee's work. Why don't we hear from Ms. Lynch in the office? Good morning. May I please have the floor? Can you enlighten us at all into what some of us may think is at least some tension in the case law between what's required for sufficient written description in the first instance, which includes not every single possible embodiment, and now the standard that we apply when we're looking at priority? Yes, Your Honor. If you look at page 21 of our red brief, we talk about this. And to satisfy the written description requirement, it has to clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed. And here, there's nothing in the 125 patent that would put a person of ordinary skill in the art that they had claimed or invented the collar and ring embodiment. And even Finn doesn't really say that. He says, well, somebody might know to take what we did and change it. But it doesn't put anybody on notice. And that's important because it's not fair for competitors to go off and start inventing something and then have someone put in a CIP application, put in all this additional disclosure, and then be able to get a priority date back before they actually put the adequate disclosure out to put people on notice. So as this Court has recognized, I think the priority is the crux of the issue here. I'm going to, I guess, continue on that. I mean, I take the intuition at the level of intuition that there's something different here between the cans and the canless ring and collar. Is there a way of finding words to describe beyond the intuition about why that intuition is right? I mean, what is it about the difference between those two things that you could explain as supporting? Sometimes intuitions are wrong, right? The intuition that, boy, that's kind of different. Well, I think Your Honor actually already mentioned one of the things was, you know, in the 125 patent where it was just the light fixtures attached to the speed bar, you could take those fixtures on and off, snap them on and off. Now he has an integrated system where the PAR lamps are, you know, put into this frame, and it's an integrated system where you're not changing anything. And it is something different. I mean, he obviously knew it was different. He filed a CIP application. He put in figures 41 and 42. He put in, you know, columns 12 and 13 to explain it. So he obviously thought it was something different. The second issue I want to just talk about briefly is, you know, that the claim construction doesn't affect the priority analysis. You know, there's kind of three possible claim constructions that the parties have addressed here. And I think the Board sums this up in its rehearing decision actually at A9 in footnote 3. So what the Board says there is, you know, if 112.6 applies, the Board found that the only corresponding structure for the lamp holding means was the collar. And so there would have been no written description in the 125 patent for the collar. Even if you find 112.6 doesn't apply, the same thing, the rigid member would have had to both mount the PAR lamps in the housing and mount the housing. And the Board found that only the collar embodiment does that. So again, there would be no written description support in the 125 patent. Third, Finn argues that the claim is broad enough to cover both the can and the collar. And even under that, if this Court were to adopt that claim construction, then the 125 patent wouldn't support the full scope of Claim 61. It wouldn't support the scope of both the can and the collar. And your Lukacs, Costelli, and Chester cases address that. If this Court has no further questions, thank you. Enri Katz says that the inventor's own work can't be used against him. So you have a hole here, and that's not filled. Because if you say Mr. Finn's not entitled to the priority date of the 125, but that the 434 is obvious in light of the 125, then his own work is used against him to bar him from getting Claim 61. But that's only if we, or more importantly the Board, had a basis for concluding that as to the Claim 61 material, this was really only, or his work only, as opposed to his work jointly with the partner. Right. And I would point out that Mr. Finn's affidavit is the only thing in the record that was never challenged as to whether he was the only inventor or not. And you think that was sufficient under our case law to establish that he was the sole inventor? I think that if it wasn't, it should be remanded to the examiner for further... Well, who's got the burden? You all do, right? Yes. But if the Patent Office accepts an affidavit in a case as being sufficient, shouldn't the patentee be able to rely on that too? I don't understand what you mean by affidavit as sufficient. They didn't accept it as being sufficient to establish that you were not the co-inventor. The affidavit was actually filed in the 9-1-2. As far as I know, in the prosecution history, no one ever asked for an affidavit in the 434. The issue arose at the Board. But the 9-1-2 had joint inventories. Yes, it had joint inventorship. Anything else? Final thoughts? No, thank you. Thank you for your time. Thank you. We thank all parties and the cases submitted.